ISADORE BURSTEIN, ISADORE WINARSKY, PARTNERS TRADING AS BURSTEIN & WINARSKY, PLAINTIFFS-RESPONDENTS, v. UNION INDEMNITY COMPANY, A CORPORATION OF LOUISIANA, AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Submitted February 17, 1933—Decided April 27, 1933.

For the defendant-appellant, *McDermott, Enright & Carpenter (Charles S. Kuebler).*

For the plaintiffs-respondents, *Herman E. Dultz (George H. Rosenstein).*

PER CURIAM.

It appears from the memorandum filed by Judge Dungan in the Essex Circuit Court that the plaintiffs on November 6th, 1930, filed a mechanics' lien against the property of Frank LaFera. Prior thereto LaFera had executed to the Norfolk Building and Loan Association a bond and a mortgage covering the premises liened; the proceeds of the mortgage were to be used for the payment of those who had furnished labor and material used in the building to be erected thereon. The plaintiffs in this case had furnished material. LaFera, presumably at the request of the building and loan association, obtained the bond in suit from the defendant, the Union Indemnity Company. The bond is in the sum of $2,250, and recites that a lien claim had been filed in the sum of $1,101.84, and that the same arose out of a written contract for materials used in the erection of the building. A condition of the bond was that "if the principal should pay or cause to be paid to the obligees"—who are the plaintiffs in this suit—"their heirs, executors, administrators or assigns such sums of money as might be decreed to be due from said principal under and by virtue of such claim or lien notice and all costs of suit, then this obligation to be void; otherwise, to remain in full force and virtue."

Judge Dungan said, in part: "It is insisted by the defendant that this bond was never delivered to the plaintiffs in suit. It is made to them. They were the plaintiffs in a mechanics' lien suit, and it is admitted by them and by their attorney that this bond never actually came into their hands. There is no question in this case that the execution of this bond was for their benefit; that the defendant intended the bond should indemnify the plaintiffs against the failure of the principal upon the bond to pay any sum which

should be decreed to be paid by him in the mechanics' lien suit. Mr. Dultz, the attorney of the plaintiffs in the mechanics' lien suit, testified that although the bond never came into his possession, in a telephone conversation with Mr. Herr, the attorney of the mortgagee, the bond was read to him. When the mechanics' lien suit was started, the building and loan association, the mortgagee, was not made a defendant, but a subsequent search disclosed the mortgage. The attorney of the morgtagee was informed that the building and loan association would be made a party defendant. It was then agreed that the matter could be taken care of by a bond. LaFera obtained the bond in suit, and delivered it to the building and loan association or to its attorney. After the bond was read to Mr. Dultz, he expressed himself as satisfied therewith and the same was left with the county clerk.''

As between the surety and obligee there would seem to have been a complete delivery of the bond. "Delivery by the surety may be made through an agent, and where the surety places a fully executed bond in the hands of an agent for use in a transaction to be consummated, without giving the agent any special instructions, he thereby authorizes delivery of the bond to the obligee to secure any agreement coming within the terms of the bond.'' 50 *Corp. Jur.* 42. It would seem to follow that where the surety, as in this case, placed a fully executed bond in the hands of a third party without restrictions and with ample authority to deliver the same, that delivery to the county clerk after reading the bond to the plaintiff's attorney was delivery to them.

Judge Dungan, in deciding the bond good as a voluntary obligation, went on to say: "Several defenses are interposed in this case, based upon the theory that this bond was given under the 1917 provisions of the 'Mechanics' Lien act,' relating to the release of lands upon the filing of such a bond, and also under chapter 58 of the laws of 1928, at page 127. In the first place it may be noted that the bond does not even describe the land covered by the lien, and the proofs in this case I think clearly demonstrate that the purpose

of the bond was not to release the land but that it was for the purpose of obtaining moneys due to LaFera from the Norfolk Building and Loan Association upon the bond and mortgage and to have them applied to those who had performed labor and furnished materials, in particular the plaintiffs in this suit, who had furnished materials to the principal on the bond. As a matter of fact, the land was not released, as contemplated by the 1917 and 1928 acts. Suit was prosecuted to completion against LaFera, and a general judgment obtained against him, to be made specially of the land. It is true that there was some attempt made to have a bond executed which would comply with the statute, by having the land described in it and by having it approved by a Circuit Court judge or a Common Pleas judge, as contemplated by the statute, which was unsuccessful, the bond being executed only by the Union Indemnity Company, the defendant in this suit. My view is that the bond in suit is not a bond under the statute at all; and, of course, if it is not, the statutory provisions do not apply; but, assuming it to be a bond, intended to be such under the statute, is there any reason why, because it does not in all particulars comply with the statutory provisions, the defendant in this case should be released from its obligations under the bond? The statute certainly was not adopted for the benefit of the sureties. The evident purpose of the act is for the benefit of those principals who for very satisfactory reasons want their land released from the effect of a lien, in order that they may convey or mortgage it. That is the real purpose of the act, and the mere fact that, assuming it was intended this bond should be under the act, I see no reason why the defendant should be released from its obligation because all the statutory forms have not been followed. I think the authority for that view is reflected in the case of *Koch* v. *Costello,* 93 *N. J. L.* 367."

The judge, deciding that the bond in suit had not been canceled, went on to say in part: The original bond indemnified the plaintiffs in suit. The acts said to evidence cancellation were done without authority from the plaintiff,

or their attorney. The bond was taken from the files of the county clerk's office and given to Miss London, representing the Union Indemnity Company, and the new bond was then drawn. Admittedly, Miss London mutilated the original bond by removing the signature and seal of the Union Indemnity Company. She says that it was done in the presence of Mr. Herr, but she admits that he required her to give the bond back. She further admitted that he told her that he had taken it from the files of the county clerk and must return it. Miss London then gave the bond back together with the new bond. Mr. Herr testified that he took the bond to Miss London, in order that a clause might be inserted which would properly describe the property upon which the lien had been filed. Having another errand to do, he went out and when he came back Miss London handed to him the new bond. He then found that the old bond had been mutilated. The undisputed proofs in the case are that there was no consent given either by the plaintiffs, or their attorney, for the mutilation of the bond by Miss London. Judgment will be awarded in favor of the plaintiffs.

The other matters argued are without merit. The judgment is affirmed, for the reasons given by Judge Dungan.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.